IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JACOB S. BLAKE, JR., | |
| Plaintiff, | No. 21 CV _____ |
| v. | JUDGE _____ |
| OFFICER RUSTEN T. SHESKEY, Individually, | MAGISTRATE JUDGE_____ |
| Defendant. | |
| | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, JACOB S. BLAKE, JR., by and through his attorneys, and complaining of Defendants, RUSTEN T. SHESKEY, individually, who states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of PLAINTIFF's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. §1391(b), as the events giving rise to the claims asserted in this complaint occurred within this District.

4. Plaintiff, JACOB S. BLAKE, JR. (hereinafter Plaintiff BLAKE) was, at all relevant times, a resident of Kenosha, Wisconsin.

5. The City of Kenosha is and was at all material times, a municipality and political subdivision of the county of Kenosha, state of Wisconsin, organized pursuant to Chapter 59 of the Wisconsin Statutes, and existing under and by virtue of the laws of Wisconsin.

6. Defendant OFFICER RUSTEN SHESKEY was, at all relevant times, a Kenosha Police Officer employed by the City of Kenosha, who was acting under color of state law and within the scope of his employment.

7. Pursuant to Wis. Stat. § 895.46, the City of Kenosha has a legal obligation to pay damages and costs against Defendant SHESKEY if it is determined that Defendant SHESKEY was acting within the scope of his employment at all material times.

## **FACTS COMMON TO ALL COUNTS**

8. At all times relevant hereto, Plaintiff, BLAKE was a father of three children who worked as an armed security guard in Illinois.

9. On August 23, 2020, Plaintiff BLAKE attended a gathering of friends and family to celebrate his son's eighth birthday at 2805 40th Street in Kenosha at the invitation of Laquisha Booker, the mother of one of his children who lived at that address.

10. Following a verbal dispute between Booker and a female neighbor, Plaintiff BLAKE chose to leave the area with two of his sons to avoid the confrontation between the two women.

11. At approximately 5:11 p.m., Booker called the Kenosha police and related, *inter alia*, that she had allowed him to come to the residence but that he "wasn't supposed to be there."

12. Defendant SHESKEY and other officers were subsequently dispatched to 2805 40th Street for what was initially termed "family trouble."

13. Within three minutes, Defendant SHESKEY and other officers arrived at 2805 40th Street as Plaintiff BLAKE was putting one of his sons into the backseat of a Dodge SUV.

14. Upon arrival, Defendant SHESKEY and other officers approached Plaintiff BLAKE. Without announcing any intention to arrest Plaintiff BLAKE and in the absence of any verbal command to place his hands behind his back to be handcuffed, Defendant SHESKEY grabbed Plaintiff BLAKE by the wrist and began to apply physical force to his arm as he was in the process of placing one of his sons into the back of the SUV.

15. Believing he was about to be attacked by the police, Plaintiff BLAKE tensed up his arm and attempted to maintain his balance by putting his hands on top of the car.

16. Immediately, Defendant SHESKEY and other officers began to physically attack Plaintiff BLAKE by placing Plaintiff BLAKE in a headlock, punching and choking him, and shocking him with a taser on three occasions.

17. As Plaintiff BLAKE struggled to his feet, he retrieved a folding utility knife off the ground that he had previously dropped.

18. After retrieving the folding utility knife, Plaintiff BLAKE began to walk away from the officers in a counterclockwise direction, first travelling from the passenger side of the SUV to the front of the vehicle, then turning left to walk parallel with the front of the SUV and finally, turning left again to walk parallel with the driver's side of the SUV until he reached the driver's side door and placed his left hand on the door handle.

19. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE attempt to run from the officers.

20. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE attempt to strike any of the officers.

21. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE attempt to verbally threaten the officers.

22. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE attempt to verbally threaten anyone present on the scene.

23. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE attempt to point the knife in the officers' direction.

24. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE make any abrupt physical gestures.

25. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Plaintiff BLAKE turn to face the officers or otherwise initiate any type of physical confrontation.

26. As Plaintiff BLAKE walked around to the driver's side of the SUV, Defendants SHESKEY and other officers followed him with their guns drawn.

27. At no time from the point at which Plaintiff BLAKE began to walk away from the officers until the time he reached the driver's side door did Defendant SHESKEY feel that Plaintiff BLAKE posed a threat to him based on his possession of the utility knife.

28. Once Plaintiff BLAKE reached the driver's side door of the SUV, he began to open the door with his left hand.

29. As Plaintiff BLAKE opened the door of the SUV, Defendant SHESKEY grabbed Plaintiff BLAKE'S t-shirt and began to pull him backwards.

30. At the point at which Plaintiff BLAKE began to open the driver's side door of the SUV, there were multiple civilians in the immediate vicinity, including four women and a toddler standing on the parkway within feet of the SUV.

31. At the point at which Plaintiff BLAKE began to open the driver's side door of the SUV, the civilians, including four women and a toddler, stood directly across from where Defendant SHESKEY and other officers were pointing their weapons.

32. At the point at which Plaintiff BLAKE began to open the driver's side door of the SUV, two of Plaintiff BLAKE'S young children – ages 5 and 8 – were in the back seat.

33. As Plaintiff BLAKE opened the driver's side door, he felt Defendant SHESKEY grab his t-shirt and pull him backwards as he was attempting to sit down inside the SUV.

34. As Plaintiff BLAKE opened the driver's side door, he immediately threw the folding knife onto the floorboard of the SUV.

35. The movement of the right hand and arm of Plaintiff BLAKE was fully visible to Defendant SHESKEY at the time Plaintiff BLAKE opened the door.

36. The movement of the right hand and arm of Plaintiff BLAKE was fully visible to Defendant SHESKEY at the time Plaintiff BLAKE attempted to sit down in the SUV.

37. The movement of the body of Plaintiff BLAKE in a downward and away position into a sitting position in the driver's seat of the SUV was fully visible to Defendant SHESKEY.

38. The action of Plaintiff BLAKE throwing the folding knife onto the floorboard of the SUV was fully visible to Defendant SHESKEY.

39. At the moment when Plaintiff BLAKE threw the knife to the floor, his left hand was still on the exterior door handle, while his right hand and arm were visibly extended in plain sight away from Defendant SHESKEY in the following position:



40. After Plaintiff BLAKE had thrown the knife to the floor in full view of Defendant SHESKEY, Defendant SHESKEY continued to pull back on the t-shirt of Plaintiff BLAKE with one hand and fired his semi-automatic pistol with the other.

41. At a time when Plaintiff BLAKE had visibly dropped the folding knife in full view of the officer, Defendant SHESKEY fired a total of seven shots at point blank range.

42. At the time of the first shot, Plaintiff and Defendant SHESKEY were positioned as follows:



7

43. At the time of the second shot, Plaintiff BLAKE and Defendant SHESKEY were positioned as follows:



44. At the time of the third shot, Plaintiff BLAKE was seated with his right foot completely in the SUV as Defendant SHESKEY continued to shoot Plaintiff BLAKE inside the vehicle. Their positions were as follows:



9

45. At the time of the fourth shot, Plaintiff BLAKE remained seated, with both feet inside the SUV as Defendant SHESKEY continued to shoot. Their positions were as follows:



10

46. At the time of the fifth shot, Plaintiff BLAKE and Defendant SHESKEY were positioned as follows:



47. At the time of the sixth shot, Plaintiff BLAKE and Defendant SHESKEY were positioned as follows:



48. At one point during the course of firing the seven shots, Defendant SHESKEY stopped looking at Plaintiff BLAKE and turned his head to his left while still firing his weapon.

49. At the time of the seventh shot, Plaintiff BLAKE and Defendant SHESKEY were positioned as follows:



50. Throughout the entire course of all seven shots being fired, Plaintiff BLAKE was moving away from – and not toward – Defendant SHESKEY into a seated position, as evinced by the fact that the t-shirt Plaintiff BLAKE was wearing was continuously stretched by Defendant SHESKEY'S grasp of it, even after the seventh shot occurred and Plaintiff BLAKE'S spinal column was severed.

51. At the time Defendant SHESKEY fired all seven shots, at least four women and one toddler stood on the opposite side of the SUV and were in imminent danger from being hit by gunfire and/or ricocheting bullets or fragments thereof. The position of these bystanders at the time the gunfire had commenced is as follows:



52. At the time Defendant SHESKEY fired all seven shots, he held the muzzle of his weapon only a few feet away from where Plaintiff BLAKE'S two young children sat, placing them in imminent danger from being hit by gunfire and/or ricocheting bullets or fragments thereof.

53. At least one of the shots from Defendant SHESKEY'S gun was fired directly into the side of the SUV and at an angle toward where the children sat in the rear seats. This bullet ricocheted and landed outside the driver's door of the SUV.

54. But for the fact that a second layer of steel absorbed the bullet fired into the door of the SUV, the bullet would have continued in its path through the driver's seat and into the rear passenger compartment where the children sat. The front and side views of the driver's side of the SUV where the ricocheting bullet was fired is depicted below:





55. The bullets Defendant SHESKEY fired from his Glock 17 semiautomatic pistol into the side of the car and the body of Plaintiff BLAKE were 9-millimeter Hornaday Luger rounds, a type of hollow point bullet with a polymer tip designed to expand upon entry into its target in order to inflict the maximum amount of damage to bone and tissue.

56. Six of the seven rounds fired by Defendant SHESKEY ripped into the arms, back and left side of Plaintiff BLAKE'S body as he sat down in the driver's seat of the SUV. Some rounds fragmented after impacting Plaintiff BLAKE'S body.

57. The fusillade of bullets that Defendant SHESKEY fired into the body of Plaintiff BLAKE caused catastrophic injury and paralysis. At least one round fired by Defendant SHESKEY

16

ripped through the spinal column of Plaintiff BLAKE, severing his spinal cord and instantly rendering his fully seated body limp upon impact.

58. After shooting Plaintiff BLAKE, Defendant SHESKEY and other officers who were at the scene were not interviewed by investigators for two, or in some cases, three days, and only after they had conferred extensively with attorneys and union representatives as to what the claimed justification would ultimately be for shooting Plaintiff BLAKE seven times in front of his children.

59. Defendant SHESKEY and each of the officers refused to have any aspect of the interview recorded and none of their statements given were made under oath. In an effort to conceal material evidence and avoid making any statements that might compromise Defendant SHESKEY and/or the other officer on the scene, some officers deactivated their audio microphones in the aftermath of the shooting and/or cautioned each other to remain silent.

60. By contrast, the first interview of Plaintiff BLAKE occurred within hours of the shooting when DCI agents appeared next to his ICU hospital bed at a time when he was heavily sedated and in intractable pain. Believing that the entire incident would have been captured on body cam video, he urged DCI investigators to "look at the video" to confirm that he had indeed thrown the knife to the floor of the car as he was sitting down and prior to being shot by Defendant SHESKEY.

61. As a direct and proximate result of the Defendant's misconduct as fully detailed herein, PLAINTIFF suffered grave physical and psychological injuries that included physical harm from six gunshot wounds, permanent paralysis, disfigurement and disability, as well as great mental anguish, humiliation, degradation, loss of reputation and anxiety.

17

Case 2:21-cv-00381-SCD   Filed 03/25/21   Page 17 of 19   Document 1

### Count I: §1983 Excessive Force

62. Plaintiff BLAKE re-alleges paragraphs 1 through 61 as if fully restated herein.

63. As a citizen of the United States, BLAKE is protected against the use of excessive and deadly force without cause or justification as guaranteed by the Fourth Amendment to the United States Constitution.

64. As more fully described in the preceding paragraphs, the intentional conduct of Defendant SHESKEY was objectively unreasonable and constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

65. The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff BLAKE.

66. BLAKE suffered catastrophic, permanent injuries as a result of the hereinafter described actions of Defendant SHESKEY.

67. As a direct and proximate result of the use of excessive force by Defendant OFFICER SHESKEY, Plaintiff BLAKE has suffered and will continue to suffer physical and emotional damages which will be proven at trial.

WHEREFORE, Plaintiff BLAKE prays for judgment against Defendant OFFICER SHESKEY, in a fair and just amount sufficient to compensate PLAINTIFF for the injuries he has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

**PLAINTIFF demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.**

Respectfully submitted,

By:     /s/ *Patrick Salvi, II*
        For the Plaintiffs

**SALVI, SCHOSTOK & PRITCHARD P.C.**
Patrick A. Salvi, II (Illinois Bar No. 6293686)
Tara Devine (Wisconsin Bar No. 1045764)
Lance Northcutt (Illinois Bar No. 6278144)*
Brian Salvi (Illinois Bar No. 6313888)
Jennifer Cascio (Illinois Bar No. 6325256)*
Jackie Wilcox (Illinois Bar No. 6336949)
161 N. Clark Street, Suite 4700
Chicago, IL 60601
(312) 372-1227
psalvi2@salvilaw.com
tdevine@salvilaw.com
lnorthcutt@salvilaw.com
bsalvi@salvilaw.com
jcascio@salvilaw.com
jwilcox@salvilaw.com

*- and -*

**BEN CRUMP LAW**
Ben Crump (Washington, D.C. Bar No. 1552623)*
717 D Street N.W., Suite 310
Washington, D.C. 20004
(800) 959-1444
ben@bencrump.com

*- and -*

**THE LAMARR FIRM PLLC**
B'Ivory Lamarr (Wisconsin Bar No. 1122469)
5100 Westheimer Road, Suite 200
Houston, TX 77056
(900) 679-4600
blamarr@lamarrfirm.com

***Indicates Attorneys Currently Pending Admission to the Eastern District of Wisconsin***

19

Case 2:21-cv-00381-SCD   Filed 03/25/21   Page 19 of 19   Document 1